IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOESEPHUS AUSTIN,<br>　　　Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　　　Respondent. | §<br>§<br>§  3:16-cv-3420-M (BT)<br>§  3:12-cr-0211-M (BT)<br>§<br>§<br>§ |

### **FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
### **OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Joesephus Austin, a federal prisoner, filed a motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. He also filed a motion for summary judgment (ECF No. 12.) The District Court referred the resulting civil action to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the magistrate judge recommends that the motion to vacate, set aside, or correct sentence and the motion for summary judgment be DENIED.

I.

Movant challenges his conviction by a jury for conspiracy to unlawfully distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(E)(i). On October 29, 2014, the District Court sentenced Movant to 84 months in prison. On February 12, 2016, the Fifth Circuit Court of Appeals affirmed his conviction and sentence. *United States v. Hudspeth, et al.*, 639 F.

App'x 1004 (5th Cir. 2016). On December 6, 2016, Movant filed a § 2255 motion, in which he argues:

1. He received ineffective assistance of counsel when:

    (a) Counsel failed to obtain documents from Movant's former attorney;

    (b) Counsel failed to present Movant's medical records at trial;

    (c) Counsel advised Movant to sign a waiver of his right to file a motion for sentence reduction under Amendment 782 of the Sentencing Guidelines;

    (d) Counsel failed to challenge allegedly perjured testimony offered by Dr. Padron and failed to challenge the government's suppression of evidence; and

2. The government knowingly used perjured testimony and suppressed exculpatory evidence.

II.

The following factual background describing the conspiracy and Movant's role in the conspiracy is taken from the Fifth Circuit's appellate decision:

> Dr. Nicholas Padron, a physician, operated a clinic where he wrote illegitimate prescriptions to patients seeking hydrocodone in exchange for cash. He pled guilty and served as the lead witness for the government against defendants, who pled not guilty and proceeded to trial. Padron testified that he obtained new patients through the use of "patient herders," or individuals who would bring new patients to the clinic in exchange for cash or free medical services. He prescribed Xanax, promethazine with codeine, and hydrocodone, often without examining the patients brought in by the herders. At trial, Padron identified Hudspeth, [Movant], and Bryant as patient herders. Hollier was the pharmacist in charge of Urban Independent Pharmacy, where she oversaw the fulfillment of many prescriptions written by Padron.

> After months of investigation, federal agents searched Padron's clinic pursuant to a warrant. Based on the evidence obtained, a federal grand jury returned an indictment, charging Padron, Hudspeth, [Movant], Bryant, Hollier, and several other patient herders with conspiracy to distribute hydrocodone outside the scope of professional practice and without a legitimate medical purpose.
>
> ****
>
> The evidence concerning [Movant's] participation is also sufficient to affirm his conviction. Unlike Hudspeth, [Movant's] name does not frequently appear in the clinic appointment book, nor is it among the contacts in the cell phone the clinic used to communicate with herders. But the government put forth evidence at trial to explain the absence: Dr. Padron testified that [Movant] often accompanied Hudspeth to the clinic, joining him on his scheduled visits without a documented appointment of his own. A January 5th search by law enforcement at the clinic found Hudspeth and [Movant] at the clinic with a number of patients. Further, [Movant's] name did appear on a list of names and numbers maintained by the pharmacy that Dr. Padron later identified as a catalog of patient herders. Another patient herder identified [Movant] as a participant in the scheme, and Padron's front desk employee identified him as a regular at the clinic, coming in every 30 days with four to five patients. [Movant] also appeared regularly on surveillance video from the clinic.

*Hudspeth,* 639 F. App'x at 106-08.

### III.

### 1. Ineffective Assistance of Counsel

To sustain a claim of ineffective assistance of counsel, Movant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Movant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, Movant must prove prejudice. To prove such prejudice, Movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A. Documents

Movant was originally represented in his criminal case by attorney David Coody. After Coody withdrew, John Stickels was appointed to represent him. Movant claims Stickels was ineffective when he failed to obtain and present documents from Coody. Movant argues Stickels failed to obtain investigative reports prepared by a private investigator, and Coody's trial study notes. He also states Stickels failed to file an affidavit stating that Coody had provided him with all of Movant's documents.

Movant's claims are conclusory. He has failed to submit any evidence that documents from his previous counsel were not provided to Stickels. He has also failed to explain what information was contained in these documents and how they would have benefitted the defense. Movant's conclusory claims should be denied. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing

that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

## B.   Medical Records

Movant argues his counsel was ineffective when counsel failed to admit his medical records at trial to show that he was a patient of Dr. Padron's and had a legitimate reason to be at the pain clinic.[1]

The record shows, however, that Movant's medical records were admitted at trial. (ECF No. 858 at 183.) Also, Dr. Padron and another government witness, Cassandra Flores, both testified that Movant was a patient at the clinic. (*Id.* at 178-79, 184-85, 215-18, 276-77; ECF No. 859 at 95-96). In closing arguments, defense counsel also argued that Movant was at the pain clinic because he was a patient. Counsel stated:

> [Movant] came to see the doctor in -- in October of 2011. He came to the doctor because he had a bad back. And remember when Dr. Padron was on the stand, we looked at [Movant's] medical records. I asked him what this radiology report was. He said, well, a radiology report is an x-ray; it shows [Movant] had fused vertebrae and bulged disks. The radiology report from someone other than Dr. Padron shows that he was in pain.
>
> You get a prescription for hydrocodone because your back hurts and you're in pain. That's why [Movant] was there in October of 2011.
>
> I'd also -- a reasonable deduction from the evidence, we can get a reasonable deduction from the evidence about why he was there January 5th. The testimony is from [Movant's] medical records that

---

[1] In Movant's Reply, he states he did not raise this claim. (*See* ECF No. 12 at 2.) In his motion, however, he stated his counsel was ineffective "when he FAILED to present to the jury Medical records that proved that he was a patient of the Pain Clinic and had a legitimate medical purpose for being at the Clinic during this alleged conspiracy time period." (ECF No. 1 at 5.) It is not clear whether Movant has abandoned this medical records claim. The Court therefore addresses it.

5

> Dr. Padron fired [Movant] as a patient, wrote him a letter. "You're doctor shopping. You're fired as my patient. Come pick up your medical records."
>
> So [Movant] goes in January 5th. Did he go there to pick up his medical records? I think it's reasonable to believe he did.

(ECF No.862 at 67-68.) Movant's claim that counsel was ineffective for failing to present Movant's medical records at trial is without merit.

### C.  Waiver

Movant argues his counsel was ineffective when counsel advised him to sign a waiver of his right to file a motion for reduction of sentence under 18 U.S.C. § 3582 related to the sentencing guideline amendments. Movant argues he did not receive the appropriate sentence reduction under the amendments, and that his counsel guaranteed him that if he signed the waiver, he would receive a sentence at the lowest end of the guideline.

Movant's claim is without merit. The record shows Movant was sentenced on October 29, 2014. On November 1, 2014, Amendment 782 to the Sentencing Guidelines became effective and provided for a two-level decrease in Movant's offense level. By signing the waiver, Movant received the two-level reduction at sentencing. If Movant had not signed the waiver, he would have been required to file a motion seeking the reduction after it became effective on November 1, 2014. Movant has failed to establish that his counsel's advice was deficient or that he suffered the required prejudice.

### D.  Testimony of Dr. Padron

Movant argues his counsel was ineffective when counsel allowed Dr. Padron to present allegedly perjured testimony, and when counsel failed to raise

6

a challenge under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), based on the government's failure to turn over "the deal they made with [Dr. Padron] for his false testimony." (ECF No. 1 at 7.) In his reply, Movant also argues the prosecutor failed to provide exculpatory evidence that Dr. Padron told the government Movant was not involved in the offense.

Movant has not stated how counsel could have prevented Dr. Padron's testimony, and the record shows defense counsel extensively cross-examined Dr. Padron. Padron testified on direct examination that the names of patient herders were logged onto an appointment calendar at the pain clinic, and that the clinic kept a log sheet of the dates patient herders came to the clinic and the amount each herder paid in cash for the drugs. (ECF No. 858 at 158-59, 196.) On cross-examination, Movant's counsel established that Movant's name was not listed on the calendar or the log sheet. (*Id.* at 217-20.) Padron also testified that the clinic had a TracFone containing the names of the patient herders. (*Id.* at 150.) Defense counsel established that Movant's name was not listed in the TracFone. (*Id.* at 217-20.) Movant has failed to establish that his counsel was ineffective.

The record also shows that Movant's counsel, along with the co-defendants' counsel, questioned Dr. Padron about his motive to cooperate with the government. Co-defense counsel elicited testimony from Dr. Padron that his sentence exposure was up to twenty years, and that he had recently received treatment for cancer. (ECF No. 858 at 203-04.) Padron also stated that his wife worked at the clinic, and he did not want his wife charged with any crime. (*Id.* at

7

202.) Padron agreed it was important to him that the government be pleased with his cooperation. (*Id.* at 206.)

The record further shows the government informed the defense that Dr. Padron stated Movant was not involved in the offense, but later changed his statement to say that Movant was involved. Movant submitted a copy of an email the government sent to defense counsel with this information. (ECF No. 12 at 7.) Movant's counsel used this evidence to cross-examine Dr. Padron. Dr. Padron admitted he told the government Movant was not involved in the conspiracy. (ECF No. 858 at 223.) Dr. Padron stated the government was "kind of mad" when he told them Movant was not involved. (*Id.* at 224.) Later the same day, Padron told the government that Movant was in fact involved. (*Id.* at 226.) Dr. Padron also testified that in exchange for his cooperation, he hoped to receive a sentence of under five years. (*Id.* at 227.) Movant's claim that counsel was ineffective based on counsel's handling of Dr. Padron's testimony is without merit.

### 2. Due Process

Movant claims the government knowingly used perjured testimony to convict him in violation of his due process rights, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959).

The government argues this claim is procedurally barred because Movant failed to raise the claim on direct review. When a movant fails to raise a claim on direct appeal, the claim is procedurally defaulted and can only be considered under § 2255 if the movant can show cause for his failure to raise the claim on

direct appeal and actual prejudice, or that he is actually innocent. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Movant has failed to show cause for his failure to raise this claim, or that he is actually innocent. The claim is therefore procedurally barred.

Additionally, the claim is without merit. Movant has submitted no evidence that the government knowingly offered perjured testimony. Movant's conclusory claim should be denied.

IV.

For the foregoing reasons, the Court recommends that Movant's § 2255 motion and motion for summary judgment be DENIED.

Signed September 4, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).